IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JEWEL F.,[1]

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civil Action 2:24-cv-81
Magistrate Judge Chelsey M. Vascura

**OPINION AND ORDER**

Plaintiff, Jewel F. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a Supplemental Security Income ("SSI"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 8); the Commissioner's Memorandum in Opposition (ECF No. 10); Plaintiff's Reply (ECF No. 11); and the administrative record (ECF No. 7). For the reasons that follow, Commissioner's non-disability determination is **AFFIRMED**, and Plaintiff's Statement of Errors is **OVERRULED**.

    **I.**    **BACKGROUND**

Plaintiff filed her SSI application in November 2021, alleging that she became disabled on January 1, 2021. After Plaintiff's application was denied initially and on reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on April 5, 2023, at which

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

Plaintiff, represented by counsel, appeared and testified. A vocational expert ("VE") also appeared and testified. On May 1, 2023, the ALJ issued a non-disability determination which became final on November 17, 2023, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. She contends that remand is warranted because the ALJ erred when assessing prior administrative findings from state agency reviewing psychologists and medical opinion evidence from a consultative psychological examiner. (Pl.'s Statement of Errors 9–17, ECF No. 8.) Defendant correctly contends that Plaintiff's contentions of error lack merit. (Df.'s Memo. in Opp., 6–12, ECF No. 10.)

## II. THE ALJ'S DECISION

The ALJ issued the unfavorable determination on May 1, 2023. (R. 17–30.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

gainful activity since her November 4, 2021 application date. (*Id*. at 15.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine/lumbar facet arthropathy; major depressive disorder; post-traumatic stress disorder ("PTSD") and borderline intellectual functioning ("BIF"). (*Id*. at 19.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 20.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") [3] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except . . . . She is limited to understanding, carrying out and remembering simple instructions. She cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. She can deal with no more than occasional changes in routine work setting. [4]

(*Id*. at 23.)

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a janitor because it entailed a medium exertion level and Plaintiff was limited to light work. (*Id*. at 28.) The ALJ also relied on VE testimony at step five to find that given Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national

---

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).

[4] Because Plaintiff's contention of error are limited to her mental health limitations, the Court limits its discussion to the same.

economy that she could perform. (*Id*. at 28–29.) The ALJ, therefore, concluded that Plaintiff had not been disabled since her November 4, 2021 application date. (*Id*. at 30.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . "). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health and Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits

or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.     ANALYSIS

As previously explained, Plaintiff contends that reversal is warranted because the ALJ erred when assessing prior administrative findings and medical opinion evidence. These contentions of error are addressed, although not in the order that Plaintiff raises them, and both are found to be lacking.

### A.     Regulations Governing an ALJ's Assessment of Relevant Evidence

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[5] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).

With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, when evaluating the persuasiveness of medical opinions and prior administrative findings, an ALJ must consider the following factors: (1) "[s]upportability"; (2) "[c]onsistency"; (3)

---

[5] Because Plaintiff's SSI application was filed in 2021, it is governed by regulations that apply to applications filed after March 27, 2017.

"[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how he or she considered them. §§ 404.1520c(b)(2); 416.920c(b)(2). When considering supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support a medical opinion, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(1); 416.920c(c)(1). When considering consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(2); 416.920c(c)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. Instead, when an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . . . " §§ 404.1520c(b)(3); 416.920c(b)(3).

B.  **The ALJ's Assessment of the Consultative Psychological Examiner's Medical Opinion**

Plaintiff contends that the ALJ reversibly erred by failing to adequately address the supportability and consistency factors when she assessed a medical opinion from a consultative psychologist. (Pl.'s Statement of Errors 12–17, ECF No. 8.) Plaintiff's challenge lacks merit.

Dr. Gregory Jonhson, Ph.D., examined Plaintiff on one occasion in 2022 and reviewed a psychological evaluation done by another examiner in 2013. (R. at 404.) Dr. Johnson opined that

6

Plaintiff had an "elevated risk" for all the following: dysfunctions in remembering instructions and carrying out instructions; dysfunctions in maintaining pace and persistence in both simple and multi-step tasks; inappropriate responses to expected interactions with coworkers and to expected scrutiny from supervisors; inappropriate responses to expected workplace pressures; and she would need assistance in managing her finances. (*Id*. at 412–13.) Dr. Johnson did not, however, opine any function-by-function restrictions.

> In her assessment, the ALJ summarized Dr. Johnson's opinion, writing as follows:
>
> The undersigned considered the opinion of psychological consultative examiner, Gregory S. Johnson, Ph.D. (Ex. 4F/2). Mr. Johnson opined that it seems the claimant has an elevated risk for dysfunctions in remembering instructions and carrying out instructions; elevated risk for dysfunctions in maintaining pace and persistence in both simple and multi-step tasks; elevated risk for inappropriate responses to expected interactions with coworkers and to expected scrutiny from supervisors; elevated risk for inappropriate responses to expected workplace pressures; and she would need assistance in managing her finances.

(R. at 27.) The ALJ then determined that this opinion was not persuasive. *Id*. She wrote as follows:

> This opinion was made after a thorough evaluation of the claimant, but it is not persuasive as the language used is vague and speculative. Moreover, the claimant reported intact activities of daily living at this time, including an ability to care for her cat, watch television, attend church, make meals, do chores, and attend to her personal care, which is not consistent with some of the "elevated risk" identified in this opinion.

(*Id*.)

As this discussion demonstrates, the ALJ did not specifically use the word "supportability." (*Id*.) Nevertheless, the ALJ noted that Dr. Johnson crafted his opinion after thoroughly evaluating Plaintiff. (*Id*.) The Commissioner contends that this satisfies the supportability factor because it shows that the ALJ considered the basis upon which Dr. Johnson formulated his opinion. (Df.'s Memo. in Opp., 10, ECF No. 10.) The Court generally agrees.

7

Because Dr. Johnson was a one-time examiner, his opinions are primarily supported by data obtained during his evaluation in 2022. Even though Dr. Johnson noted that he also reviewed another examiner's evaluation from 2013, the bulk of his 10-page Disability Assessment Report outlines his own observations, clinical interview, and mental status evaluation of Plaintiff. Thus, by acknowledging Dr. Johnson's "thorough evaluation," the ALJ generally satisfied the supportability requirement.

Plaintiff also asserts that the ALJ's consistency discussion was inadequate. (Pl.'s Statement of Errors 15, ECF No. 8.) The Commissioner correctly contends, however, that the ALJ explained that Plaintiff's activities of daily living were inconsistent with the "elevated risks" opined by Dr. Johnson. (Df.'s Memo. in Opp., 10–11, ECF No. 10.) As the discussion above illustrates, the ALJ explained that Plaintiff cared for her cat, watched television, attended church, made meals, did chores, and attended to her personal care. (R. at 27.) Substantial evidence supports that explanation. Plaintiff reported that during a typical day, she tended to her cats and watched television in the morning, after lunch, and after dinner. (R. 407.) She further reported that she typically did chores daily. (*Id*.) In addition, Plaintiff reported that she attended church once or twice a month. (R. at 408.)

In any event, the Court finds that even if Plaintiff is correct, and the ALJ's supportability and consistency discussions are inadequate, any error would be harmless because Plaintiff fails to identify any material limitation opined by Dr. Johnson that the ALJ could have included in her RFC. Plaintiff notes only that Dr. Johnson opined that she had an "elevated risk in maintaining pace and persistence in both simple and multi-step tasks," and contends that the ALJ should have consequently incorporated into her RFC a need for an additional daily thirty-minute break, which was work preclusive. (Pl.'s Statement of Errors 16, ECF No. 8.) But Dr. Johnson did not opine

8

that Plaintiff's "elevated risk for dysfunction in maintaining pace and persistence" resulted in a need for an additional daily break. *See Murray v. Comm'r of Soc. Sec.*, Case No. 2:21-cv-2078, 2021 WL 6063289, at *7 (S.D. Ohio Dec. 22, 2021) (explaining that an elevated risk for dysfunction did not constitute a definitive functional limitation); *Jude v. Comm'r of Soc. Sec.*, Case No. 2:20-cv-3579, 2022 WL 612152, (quoting *Mosley v. Berryhill*, No. 1:13-0055, 2017 WL 1153896, at * 10 (M.D. Tenn. Mar. 28, 2017) (explaining that an assessment of "difficulty" with an activity "does not constitute a definitive functional limitation that the ALJ was required to incorporate into the RFC"). Indeed, Dr. Johnson's opinion lacks any vocationally relevant language or function-by-function assessments that the ALJ could have incorporated into Plaintiff's RFC. (R. at 404–14.)

For these reasons, the Court finds that the ALJ did not reversibly err when assessing Dr. Johnson's opinion. Plaintiff's contention of error, therefore, lacks merit.

**C.     The ALJ's Assessment of the Prior Administrative Findings**

Plaintiff does not challenge the ALJ's supportability and consistency analysis of the state agency reviewers' prior administrative findings. Rather, she contends that although the ALJ credited those findings, the ALJ erred by failing to incorporate all of them into her RFC. That challenge also lacks merit.

Plaintiff's file was reviewed initially by a psychiatrist, Aileen McAlister, MD, and on reconsideration by a psychologist, Karla Delacour, Ph.D. (R. at 78–79, 89–91.) Both reviewers found that Plaintiff had the following RFC: "Claimant is able to persist at tasks that can be learned in one to three months on the job. Claimant can work in close proximity to coworkers, with public contact within physical limitations. Claimant can adapt to changes within the scope of the stated MRFC parameters and conclusions." (*Id*. at 79, 91.)

9

> The ALJ began by summarizing the reviewers' findings. She wrote as follows:
>
> The State agency psychological consultants at the initial and reconsideration level opined that the claimant would have moderate limitation in the ability to understand, remember, and apply information; concentrate, persist, or maintain pace; and adapt or manage oneself; and mild limitation in her ability to interact with others. The consultants further opined that the claimant had a residual functional capacity to persist at tasks that can be learned in one to three months on the job; claimant can work in close proximity to coworkers, with public contact within physical limitations; and claimant can adapt to changes within the scope of the stated MRFC parameters and conclusions.

(*Id*. at 27.) The ALJ then determined that these findings were "persuasive overall." (*Id*.) She wrote as follows:

> These opinions are generally supported by the bulk of the objective medical evidence in the record, which shows some mental symptoms upon examination as detailed above, along with a history of complaints of depression and anxiety. The undersigned finds the mental opinions persuasive overall, while adjusting and rephrasing some of the language therein to use defined terms and remain compliant with Act.

(*Id*.)

Plaintiff does not challenge the ALJ's summary of the reviewers' findings. Instead, she contends that the ALJ erred by failing to incorporate into her RFC one of the moderate limits found by the state agency reviewers, or to adequately explain its omission. Specifically, Plaintiff contends that the ALJ erred by failing to account for the reviewers' assessment that she had moderate limits in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Pl.'s Statement of Errors 11, ECF No. 8.) The Commissioner contends that this moderate limit was not part of the state agency reviewers' ultimate RFC findings because they were contained in a preliminary worksheet. (Df.'s Memo. in Opp., 7, ECF No. 10.) Commissioner is correct.

10

When documenting their reviews, the reviewing psychologists used the Electronic Claims Analysis Tool ("eCAT"). (R. 70–80, 82–92.) On the eCAT, various mental functions are grouped under four main categories of limitations: understanding and memory; concentration and persistence; social interaction; and adaptation. The instructions on the eCAT form provide as follows:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (*i.e*., understanding and memory, sustained concentration and persistence, social interaction and adaption). Any other assessment information deemed appropriate may be recorded in the MRFC – Additional Explanation text box.

(R. 78, 89.) As these instructions demonstrate, although there are many mental functions listed on the form, the actual RFC is contained in the narrative discussions in the four text boxes that follow the four categories of limitations.

Here, under the "concentration and persistence" category, both reviewers indicated that Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id*.) And in the "explanatory text box" that immediately followed that "concentration and persistence" category—where the actual RFC is to be described in a narrative discussion—both reviewers wrote "see comments below." (*Id*.) Both reviewers then recorded their recommended limits in the "MRFC – Additional Explanation" text box. (*Id*. at 78–79, 90–91.) In that text box, neither reviewer indicated that Plaintiff's RFC included any limits on her ability to complete a normal workday or week. (*Id*.) Nor did they include in that text box any pace limitations, including an inability to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id*.)

11

Despite this, the ALJ incorporated into Plaintiff's RFC a pace limit. (*Id*. at 23.) Specifically, the ALJ determined that Plaintiff was unable to perform work requiring a specific production rate such as assembly work or work that requires hourly quotas. (*Id*.) Accordingly, the ALJ did not omit the reviewers' pace findings— the ALJ included pace restrictions in Plaintiff's RFC even though the reviewers did not include such limits in their ultimate RFC recommendations. Plaintiff cannot credibly complain about an ALJ's assessment of a reviewer's findings when an ALJ crafts an RFC that is more restrictive than the one recommended by the reviewer. *See e.g.*, *Mindy W. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-00394, 2022 WL 4365934, at *4 (S.D. Ohio Sept. 21, 2022) (finding no error where the ALJ's RFC determination included a more stringent social interaction limitation than the one recommended by state agency reviewers).

Plaintiff attempts to rely on this Court's decision in *Wickham v. Comm'r of Soc. Sec.,* Case No. 2:20-CV-6016, 2021 WL 4348725, (S.D. Ohio Sept. 24, 2021), *aff'd and adopted*, 2021 WL 4774942, (S.D. Ohio Oct. 13, 2021). (Pl.'s Statement of Errors 11–12, ECF No. 8.) There, state agency reviewers found that Plaintiff would "have issues . . . maintaining a normal workday" due to her anxiety. *Id*. at *4. This Court found that the ALJ erred by omitting that limit from Plaintiff's RFC without an adequate explanation despite finding that the reviewers' opinions were persuasive. *Id*. In that case, however, the limit at issue *was* contained in the reviewers' ultimate RFC recommendations. *Id*. [6] Such is not the case here.

---

[6] Prior to eCAT, consultants completed special form SSA-4734-F4-SUP. That form was formally divided into Section I ("Summary Conclusions" containing checkboxes) and Section III ("Functional Capacity Assessment"). In *Wickham*, the limit at issue, issues maintaining a normal workday, was included in Section III of the special forms completed by the reviewers, where they expressed their ultimate RFC recommendations.

12

For these reasons, the Court finds that the ALJ did not reversibly err when assessing the state agency reviewers' findings. Thus, this contention of error also lacks merit.

## V. CONCLUSION

In sum, the Court finds that both of Plaintiff's allegations of error lack merit. Therefore, the Court **AFFIRMS** the Commissioner's non-disability determination and **OVERRULES** Plaintiff's Statement of Errors.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE